**Kenneth M. ALLEN, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

**No. 97–3319.**

United States Court of Appeals, Federal Circuit.

May 4, 1998.

Kenneth M. Allen, pro se, of Toledo, OH.

Lori J. Dym, Attorney, U.S. Postal Service, of Washington, DC, for respondent. With her on brief were Frank W. Hunger, Assistant Attorney General, Civil Division, Department of Justice, and R. Andrew German, Managing Counsel, Legal Policy, U.S. Postal Service.

Before NEWMAN, BRYSON, and GAJARSA, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Kenneth M. Allen appeals the final decision of the Merit Systems Protection Board, Docket No. CH0353960993–I–1, affirming the action of the United States Postal Service ("USPS") in connection with denial of a job opportunity that arose during his absence for military service.[1] We conclude that the Board erred in application of 38 U.S.C. § 4301(b)(3). The decision of the Board is

1. *Allen v. United States Postal Service,* No. CH0353960993–I–1, 75 M.S.P.R. 213 (M.S.P.B. Apr.4, 1997).

reversed; we remand for appropriate further proceedings.

## BACKGROUND

Mr. Allen was employed by the USPS as a Tool and Parts Clerk, level PS–5, in a position designated for the afternoon or evening shift. He desired a position on the day shift, but no opening on the day shift had arisen. Mr. Allen also was an adjunct of the Ohio Air National Guard, and for the period February through June 1994 he was called to active duty and posted to Panama.

In February or March 1994 the USPS created an additional Tool and Parts Clerk PS–5 position on the day shift at Mr. Allen's location. Mr. Allen did not learn of the new position until he returned to the USPS after completion of his military assignment. By then the position had been filled, and Mr. Allen's assertion of a senior right to the position was rejected by the USPS. On appeal to the Board Mr. Allen argued that the USPS had an obligation, as well as several opportunities, to inform him of the position while he was on military duty, and that by statute persons on military service are not to be disadvantaged because of that service. The USPS conceded that Mr. Allen's entitlement to the position was superior to that of the person who was appointed.

The USPS argument was that neither the collective bargaining agreement, USPS regulations, nor USPS practice required that Mr. Allen be given notice of job openings that arose while he was on active military duty. The USPS stated that the burden rested entirely on Mr. Allen to seek out or request information about new jobs while he was away from the jobsite on active duty, and that the USPS had no obligation to provide him with such information. The USPS stated that although its regulations require the USPS to provide notice of new positions to employees on "annual leave" if they have left a written request for such information and their address, this obligation does not extend to employees on military leave. The USPS stated that Mr. Allen had not specifically asked to be informed, while he was on active duty, of any job openings that might arise.

The USPS also stated that although its regulations require that employees on military duty be considered for promotions during their absence, 5 C.F.R. § 353.201(a) (1994) ("promotion plans must provide a mechanism by which employees who are absent because of ... military duty can be considered for promotion"), the day shift position would not have been a promotion for Mr. Allen and thus was not covered by this regulation. As an additional reason for not notifying Mr. Allen of the new position, the USPS referred to its "preferred assignment selection [PAS] forms" by which employees formally express interest in positions for which they wish to be considered. The USPS pointed out that Mr. Allen had not listed the new position on his PAS form. Mr. Allen replied that he could not have listed the new position on his PAS form because he did not know about it.

Without reference to the applicable statutes, the Board held that the USPS must treat employees on military duty as if they were on furlough or leave of absence, and concluded that since the USPS is not required to notify employees who are on furlough or leave of absence of new employment opportunities, no such requirement applies to employees on military service. The Board did not address whether the USPS must place Mr. Allen in the new position whether or not the USPS was required to provide notice of the new job opening. This appeal followed.

## DISCUSSION

Board actions, findings, and conclusions are reviewed to ascertain whether they were "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994). No significant facts are here in dispute. The issue is whether the USPS had a duty to inform Mr. Allen of this position or otherwise to enable Mr. Allen to compete for the appointment.

The events of this case occurred in early 1994, before the October 13, 1994 amend-

ments to 38 U.S.C. §§ 4301–4307. *See* 38 U.S.C. ch. 43 (1994) (Codification) ("Former chapter 43 [§§ 4301–4307] ... continues to apply to reemployments initiated before the end of the 60–day period beginning Oct. 13, 1994....") The Board's decision does not cite any statutory provision or regulatory implementation, and makes no reference to the extensive legal framework governing the status of federal civilian employees serving on military duty. Mr. Allen correctly cites chapter 43, *see* 38 U.S.C. ch. 43 (Supp. V 1993), and quotes § 4301(b)(2) as the statute stood in early 1994, a 1992 amendment having renumbered §§ 2021–2027 as §§ 4301–4307. *See* Veterans' Benefits Act of 1992, Pub.L. No. 102–568, Title V, § 506(a), 106 Stat. 4320, 4340 (1992).

Mr. Allen is correct that 38 U.S.C. § 4304(b) as in effect before the October 1994 amendments applied to his restoration to civilian service after active duty, and granted him the rights and benefits detailed in 38 U.S.C. § 4301. Accordingly, Mr. Allen could "not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment," § 4301(b)(3), in turn implementing the statutory purpose

> to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment.

38 U.S.C. § 4301(b)(2).

The USPS states that allowing Mr. Allen to compete for the newly-created day shift position is not within the statutory scope of treating a person in military service as if such person had continued in employment during the period of military service. The USPS asserts that such a transfer is not an "incident or advantage of employment" within the meaning of 38 U.S.C. § 4301(b)(3), pointing out that the regulations relevant to § 4301(b)(3) refer only to "promotion." *E.g.,*

5 C.F.R. § 353.201(a) (1994). The absence of regulation specific to the "other incident or advantage of employment" clause of § 4301(b)(3), however, does not render that statutory language meaningless or surplusage. The regulations, by stressing promotion, did not eliminate other statutory obligations to employees in military service.[2]

Although the Federal Circuit has not treated the question, other courts have addressed this aspect of 38 U.S.C. § 4301(b)(3). Cases are summarized in Kevin D. Hart, Annotation, *What Constitutes Denial of "Incidents or Advantages of Employment" under 38 U.S.C.A. § 2021(b)(3) [now § 4301(b)(3)] Which May Not Be Denied Employee Because of Obligation as Member of Reserve Component of Armed Forces,* 51 A.L.R. Fed. 893, 1981 WL 167345 (1981). This compilation points up the three basic considerations applied by the courts. First, the courts have considered whether the "incident or advantage" is one generally granted to all employees in that workplace, and whether it was denied solely because of absence for military service. *See Monroe v. Standard Oil Co.,* 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981). Several courts have ruled that a generally available benefit can not be denied because of military duty. *See, e.g., Waltermyer v. Aluminum Co. of Am.,* 804 F.2d 821, 824–25 (3d Cir.1986) (reservist was entitled to holiday pay despite requirement that employee be present on days before and after holiday); *Carney v. Cummins Engine Co.,* 602 F.2d 763, 766–67 (7th Cir.1979) (reservist was entitled to overtime opportunities he missed while on military duty).

Second, the courts have considered whether the person absent on military duty was treated the same way as if the person had remained at work. These rulings recognize that although for some statutory purposes persons returning from military duty correctly are treated as if they had been on furlough or leave of absence, under § 4301(b)(3) they must not be disadvantaged by failure to treat

---

**2.** The statute enacted in 1994 to replace these sections amended the clause regarding the scope of protection such that a protected person "shall not be denied ... promotion, or any benefit of employment". 38 U.S.C. § 4311(a) (1994). Sec-

tion 4303(2) now expressly defines "benefit" to include "the opportunity to select work hours or location of employment." Thus Congress has made explicit what today we hold to have been implicit in the statute.

them as if they had been present at work. *See, e.g., West v. Safeway Stores, Inc.,* 609 F.2d 147, 150 (5th Cir.1980) ("collective bargaining agreement must be construed as if [reservist] was constructively present at work"); *Carlson v. New Hampshire Dep't of Safety,* 609 F.2d 1024, 1027 (1st Cir.1979) (it is not sufficient to treat reservist like any employee on leave, the court treating a shift change as a "constructive demotion"); *see also Diaz–Gandia v. Dapena–Thompson,* 90 F.3d 609, 614 (1st Cir.1996) (explaining *Carlson* ). Third, the courts have considered whether it was reasonably certain that the benefit would have accrued to the employee but for the absence for military service. *See Teamsters Local Union 612 v. Helton,* 413 F.2d 1380, 1383–84 (5th Cir.1969).

With this guidance, the undisputed facts in Mr. Allen's case all point in the same direction. The schedule Mr. Allen sought—regular daytime hours, something most workers consider desirable—whether or not viewed·as a "constructive 'promotion,'" in all events is an "incident or advantage of employment." § 4301(b)(3). The new position at issue here was made available and filled while Mr. Allen was on military duty. It is conceded that Mr. Allen's qualifications were senior to those of the person placed in the position, and it is not disputed that in view of his seniority and the collective bargaining agreement he would have gained the position had he applied for it while on military. duty. Unlike those cases wherein employer discretion or other uncertainty has supported the conclusion that the candidate would not necessarily have received the benefit in question, *e.g., Teamsters,* 413 F.2d at 1383–84, here the record reveals no reasonable uncertainty about whether Mr. Allen would have received this job, and that but for his military duty he would have known of it and requested it.

 Although the USPS established that employees on "leave of absence" status were not sent position notices, an employer can not treat employees on military duty like those on non-military leave of absence when the effect is to deny the benefits that the statute requires for employees on military duty. *See, e.g., Carlson,* 609 F.2d at 1027 ("comparison is not . . . to 'those coworkers away on non-military leave of absence'"); *Hawes v. General Motors Corp.,* 1979 WL 1956, \*3, 102 L.R.R.M. (BNA) 3041 (N.D.Ohio 1979) (rejecting argument that employer could replace reservist under collective bargaining conditions governing leaves of absence).

The statute requires that the position, or the opportunity to apply for the position, "not be denied" to Mr. Allen because of his absence for military service. In accordance with 38 U.S.C. § 4301(b)(3) the right to bid for and receive the newly-created day shift position was a protected "incident or advantage of employment," and was required to be made available to Mr. Allen. The denial of this opportunity occurred solely because of Mr. Allen's tour of military duty; thus the procedures followed were contrary to law. The Board's decision is reversed. The case is remanded for appropriate remedy.

Costs to Mr. Allen.

*REVERSED AND REMANDED.*