Dear Lawrence R. Daniels
You have requested our opinion whether a federal statute preempts the State Code of Judicial Conduct, as interpreted by the Maryland Judicial Ethics Committee. Specifically, the Committee concluded that a State circuit court judge who serves as a Staff Judge Advocate or military judge in the Maryland Army National Guard would be practicing law in violation of Canon 4 of the Code of Judicial Conduct. You ask whether the federal Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), which generally forbids discrimination against an employee who serves in the military, preempts this provision of the Code.
For the reasons stated below, we conclude that USERRA does not displace the historic power of the State to regulate judicial conduct, nor does it create an exception from the requirements of the Code of Judicial Conduct for a judge who serves in the National Guard.
 I Background
On June 5, 1995, you wrote to the Judicial Ethics Committee and requested an opinion on the propriety of your serving as State Staff Judge Advocate for the Maryland Army National Guard in light of your position as a judge on the Circuit Court for Baltimore County. In your letter, you explained that the Staff Judge Advocate has both administrative and legal responsibilities, including the provision of legal advice to the Adjutant General and the Headquarters Staff concerning ". . . the legal sufficiency of administrative personnel proceedings; interpretation of statutory and regulatory language as it applies to the Maryland Army National Guard and its missions; and advice as to military justice matters and legislative issues." You indicated that, as Staff Judge Advocate, you would not be involved in litigation. Letter from Lawrence R. Daniels to William W. Wenner, Chair, Commission on Judicial Ethics (June 5, 1995).
On July 6, 1995, the Judicial Ethics Committee issued an opinion that a judge may not serve as State Staff Judge Advocate for the Maryland Army National Guard. Letter from William W. Wenner, Chair, Judicial Ethics Committee, to Lawrence R. Daniels (July 6, 1995). The Committee recognized that Article 33 of the Declaration of Rights specifically allows a judge to serve in the National Guard,[1] but it concluded that a judge may not serve in the National Guard as a State Staff Judge Advocate. Id. Although the Committee did not explicitly state the reason for this conclusion, it was apparently based on the proscription against the practice of law by a judge set forth in Canon 4 of the Code of Judicial Conduct.[2] In response to your subsequent question whether you could serve as a military judge, the Committee issued an opinion concluding such service would constitute the practice of law in violation of Canon 4 of the Code of Judicial Conduct.
You now ask whether Canon 4, as interpreted in the Committee's decisions, is preempted by USERRA.
 II State Code of Judicial Conduct
The State Code of Judicial Conduct and the authority of the Judicial Ethics Committee derive from the Court of Appeals' broad power to regulate judicial conduct. Article IV, § 18(a) of the Maryland Constitution authorizes the Court of Appeals to issue rules and regulations governing the conduct of judges and the administration of the courts that have the "force of law." The Court of Appeals has characterized the authority to regulate the conduct of judges as a fundamental constitutional power for the ". . . maintenance of the honor and dignity of the judiciary and the proper administration of justice . . ." In re Diener and Broccolino, 268 Md. 659, 670, 304 A.2d 587
(1973); see also Maryland State Bar Ass'n v. Boone, 255 Md. 420, 429-32,258 A.2d 438 (1969) (regulation of the practice of law is a fundamental judicial power).
The Court of Appeals has exercised its rulemaking power under the State Constitution to adopt the Code of Judicial Conduct ("Code") as part of the Maryland Rules. See Maryland Rule 16-813. A violation of the Code could result in proceedings against a judge before the Commission on Judicial Disabilities. See id., Canon 6; Rule 16-803(g). Upon recommendation by the Commission on Judicial Disabilities, the Court of Appeals may discipline, censure, or remove a judge for misconduct.See Maryland Constitution, Article IV, § 4B(b).
Canon 7 of the Code creates the Judicial Ethics Committee, which serves as an advisory body to the Court of Appeals and also issues opinions on the proper interpretation of the Code of Judicial Conduct and the conflicts and financial disclosure provisions of the State Public Ethics Law. A judge who complies with an opinion of the Committee is protected from a charge of violation of the Code or the statute. Canon 7B; see also 65 Opinions of the Attorney General 285, 297-300 (1980).
This opinion is addressed solely to the preemption question that you have raised, as interpretation of the rules governing judicial ethics is entrusted to the Judicial Ethics Committee and not to the Attorney General. Thus, we do not discuss the Committee's conclusion that service as a Staff Judge Advocate or military judge constitutes the "practice of law" generally proscribed by Canon 4 of the Code of Judicial Conduct.
 III Federal Law
When Congress enacted USERRA in 1994, it built upon 50 years of prior legislation that protected the pay, seniority, and employment status of veterans who return to civilian life. See H. Rep. 103-65 at p. 20, 1994 U.S. Code Cong. Admin. News, 2450, 2453; Monroe v. Standard OilCo., 452 U.S. 549, 554-57 (1981) (detailing history of predecessor statutes that provided reemployment rights for veterans and employment rights for reservists). The statute is intended to (1) encourage service in the uniformed services by eliminating or minimizing disadvantages to civilian careers; (2) minimize disruption to persons performing service and to their employers by providing for prompt reemployment after military service; and (3) prohibit discrimination against persons because of their service in the military.[3] 38 U.S.C. § 4301.
Pertinent to your question, USERRA and its predecessor legislation forbid discrimination in employment against reservists and members of the National Guard who are absent from employment due to reserve training responsibilities. In particular, the statute provides:
 (a) A person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership . . .
 (c) An employer shall be considered to have engaged in [prohibited actions]
 (1) . . . if the person's membership [or] service . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership [or] service . . .
38 U.S.C. § 4311(a), (c)(1). The statute is designed to meet "the need to protect reservists from the temptation of employers to deny them the same treatment afforded their coworkers without military obligations."Monroe v. Standard Oil Co., 452 U.S. at 557. It protects a person serving in the National Guard "when engaged in active duty for training, inactive duty training, or full-time National Guard duty."38 U.S.C. § 4303(16).
When a reservist returns to his or her civilian job, USERRA prohibits the employer from denying any "rights and benefits" arising out of the employment relationship. The statute broadly defines "rights and benefits" to mean "any advantage, profit, privilege, gain, status, account, or interest . . . that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice . . ." 38 U.S.C. § 4303(2). USERRA, therefore protects those "rights and benefits" that are part of the employment relationship and that are affected because of an employee's absence for military service. See, e.g., Alabama Power Co. v. Davis, 431 U.S. 581, 594 (1977) (employment pension); Palmarozzo v. Coca-Cola Bottling Co. of New York,Inc., 490 F.2d 586, 591 (2d Cir. 1973) (employment seniority rights);Peel v. Florida Department of Transportation, 600 F.2d 1070 (5th Cir. 1979) (reinstatement of employment; restoration of lost wages and benefits).
USERRA applies to state employers. 38 U.S.C. § 4303(4)(A)(iii). It also preempts ". . . any State law . . ., contract, agreement, policy, plan, practice, or other matter that reduces, limits or eliminates in any manner any right or benefit provided by [USERRA]. . . ."38 U.S.C. § 4302(b).
Thus, the essence of your question is whether Canon 4, as interpreted by the Judicial Ethics Committee, adversely affects a right or benefit of employment protected by USERRA and, as a result, is preempted by USERRA.
 IV Preemption Analysis
As an initial matter, it is not at all clear that the Code of Judicial Conduct is in conflict with USERRA. The Judicial Ethics Committee did not conclude that judges are prohibited from serving in the National Guard. Nor was the circumstance that the practice of law would occur in a military setting a factor in the Committee's decision. Rather, it looked to the role of a Staff Judge Advocate as legal adviser as the basis for the conflict with Canon 4's prohibition against the practice of law. See also Annotated Code of Maryland, Business Occupations 
Professions Article, § 10-101 (defining the "practice of law" to include "giving legal advice").
Simply put, the Code of Judicial Conduct does not discriminate against reservists. A circuit court judge who serves in the National Guard labors under the same ethical proscription against the practice of law as every other circuit court judge. To conclude otherwise would be to establish a special dispensation for those judges who choose to join the National Guard. USERRA was not designed to establish special privileges or benefits for reservists that are not available to co-workers. Rumsey v. New York State Dept. of CorrectionalServices, 19 F.3d 83, 90 (2d Cir. 1994).
Even if the Committee's construction of the canons of judicial ethics were deemed to treat judges who serve in the National Guard differently from other judges, we do not believe that the Code of Judicial Conduct is preempted by USERRA. The Tenth Amendment to the United States Constitution guarantees to the states the power and responsibility to determine the qualifications of judges and of other important government officials who perform functions at "the heart of representative government." Sugarman v. Dougall, 413 U.S. 634, 647 (1973). If Congress intends to legislate in areas traditionally reserved to the states, it must make its intention to do so "unmistakably clear in the language of the statute." Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242 (1985); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947) (congressional intent to preempt the historic powers of the states should be "clear and manifest").
On its face, USERRA does not indicate a congressional intent to preempt the historic power of a state to regulate judicial conduct or exempt judges who serve in the military from the state codes of judicial conduct. USERRA only preempts a state law or an employer plan or policy that reduces or eliminates any "right or benefit" of employment that is protected by the statute. 38 U.S.C. § 4302. The rights and benefits it protects are those that derive from the reservist's relationship with his or her employer, such as pay, seniority, and leave.38 U.S.C. § 4303(2); H. Rep. 103-65 at pp. 17-19, 1994 U.S. Code Cong. Admin. News at 2450-2452. Such a benefit must be one that arises "as a result of the person's employment by the employer in question." Thomsen v.Department of the Treasury, 169 F.3d 1378, 1381 (Fed. Cir. 1999).
The constitutional authority of the State's highest court to regulate the conduct of judges is distinct from personnel rules governing pay, leave, seniority, and similar benefits of employment. Even if a judge were sanctioned with respect to some aspect of judicial employment as a result of a violation of Canon 4 related to the practice of law, that discipline would not be attributable to service in the National Guard alone. Exemption from state rules of judicial conduct is not a "benefit" of employment within the meaning of USERRA.
Since an intent to displace the constraints of ethical standards pertaining to the conduct of important State officials is neither clear nor manifest, in our view, the statute does not preempt the State Code of Judicial Conduct. Cf. Gregory v. Ashcroft, 501 U.S. 452, 467 (1991). ("We will not read the ADEA [Age Discrimination in Employment Act] to cover state judges unless Congress has made it clear that judges are included.").
 V Conclusion
In summary, it is our opinion that USERRA does not preempt the Code of Judicial Conduct's ban on the practice of law with respect to a judge who wishes to serve as a State Staff Judge Advocate or military judge in the Maryland Army National Guard.
J. Joseph Curran, Jr.
Attorney General
Craig A. Nielsen
Assistant Attorney General
Robert N. McDonald
Chief Counsel
 Opinions and Advice
[1] Prior to 1990, the State Constitution prohibited a judge from holding "any other office, civil or military." A 1990 amendment of Article 33 of the Declaration of Rights permitted a judge to be "a member of a reserve component of the armed forces of the United States or a member of the militia of the United States or this State."See Chapter 61, Laws of Maryland 1990. Neither the language nor the legislative history of the amendment indicates whether there was any intent to override judicial ethics rules to allow a judge to serve as a legal adviser within the military. See Senate Judicial Proceedings Committee Floor Report, Senate Bill 271.
[2] The same prohibition applies to federal judges and magistrate judges. 28 U.S.C. §§ 454, 632(a); Code of Conduct for United States Judges, Canon 5F. The Committee on the Codes of Conduct of the United States Judicial Conference has construed the prohibition against the practice of law to bar a part-time magistrate judge from serving as a legal adviser to a State adjutant general of the National Guard, a bankruptcy judge from serving as a staff judge advocate in the National Guard, and a magistrate judge from accepting a JAG position.See Committee on Codes of Conduct, Compendium of Selected Opinions, § 5.3-7-[1](a)-(c); Advisory Opinion No. 76.
A judicial ethics committee in Florida interpreting a similar prohibition against the practice of law reached a different result. In 1975, a majority of the Florida Committee on Standards of Judicial Conduct (now known as the Judicial Ethics Advisory Committee) concluded that a judge may serve in a limited capacity as a military legal adviser. Opinion No. 75-3 (February 11, 1975).
You indicated that judges in South Carolina serve as reserve Judge Advocates. The South Carolina Judicial Ethics Committee has not issued n opinion on this subject. Telephone conversation between A. Camben Lewis, Esq., Chairman, South Carolina Judicial Ethics Committee and Assistant Attorney General Craig Nielsen (March 31, 1999).
In a different context, the Court of Appeals of Maryland has noted a division of authority among courts as to whether a JAG officer is engaged in "the practice of law" for purposes of qualifying for admission to a bar as an out-of-state attorney. In the Matter ofApplication of Mark W., 303 Md. 1, 491 A.2d 576 (1985).
[3] State law embodies a similar policy to protect the employment status of members of the National Guard. See Annotated Code of Maryland, Article 65, § 32A.
 *Page 99